UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
EMMA A. PERALTA,

                  Plaintiff,

        -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and THE CITY OF NEW YORK,

                  Defendants.

-------------------------------------x

**MEMORANDUM & ORDER**
21-CV-6833(EK)(LB)

ERIC KOMITEE, United States District Judge:

Plaintiff Emma Peralta commenced this action *pro se* in December 2021 while employed by the New York City Department of Education ("DOE") as a teacher.  She sued DOE and the City to challenge the enforcement of the since-revoked mandate requiring DOE employees to receive a COVID-19 vaccine.[1]  In February 2022, Peralta was terminated from her position for refusing to satisfy that requirement.

Peralta alleges that the vaccination mandate violated (1) her right to "refuse unwanted medical care" under the Due Process Clause of the Fourteenth Amendment, and (2) the Supremacy Clause by contravening the Food, Drug, and Cosmetic Act ("FDCA").  She seeks a declaratory judgment that the mandate

---

[1] On February 9, 2023, the New York City Board of Health ended the vaccination mandate for DOE employees.  *See* Order of the Board of Health Amending COVID-19 Vaccination Requirements for Department of Education Employees, Contractors, Visitors and Others (Feb. 9, 2023), https://www.nyc.gov/assets/doh/downloads/pdf/notice/2023/boh-order-amend-covid-vaccine-req-doe-employees.pdf.

violated her constitutional rights, an injunction against enforcement of the mandate, and compensatory and punitive damages.[2]

The defendants have moved to dismiss Peralta's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the defendants' motion to dismiss is granted.

## I.   Background

### A.   DOE Vaccination Mandate

On August 24, 2021, in response to the COVID-19 pandemic, the New York City Commissioner of Health and Mental Hygiene issued an order mandating all Department of Education employees to submit proof of vaccination against COVID-19 by September 27, 2021.[3]  This mandate was not without controversy, and the United Federation of Teachers — which represents New York City teachers — challenged the vaccination mandate.  The City and the union proceeded to arbitration, as dictated by the applicable collective bargaining agreement, and on September 10, 2021, the arbitrator issued a decision that established

---

[2] Because the vaccination mandate is no longer in effect, Peralta's claims for a declaratory judgment and injunctive relief are moot.  *See Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414-15 (1972).  The policy change did not, however, moot Peralta's claim for damages.  *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 608-09 (2001).

[3] *See* Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for Department of Education Employees, Contractors, Visitors, and Others, https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.

procedures — applicable to all DOE employees — for seeking an exemption or accommodation.  *See* Arbitration Award dated September 10, 2021 (the "arbitration decision") 8-15, ECF No. 16-2.[4]  As discussed below, these procedures are relevant to Peralta's due process claim, as they established a framework for notice and hearings.  *See, e.g.*, *Narumanchi v. Bd. of Trustees of Conn. St. Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (affirming the denial of a state professor's procedural due process claim based on the notice and hearing rights contained in "grievance procedures" set forth in a collective bargaining agreement).[5]

Per the arbitration decision, any DOE employee could submit a request for relief — based on a qualifying religious belief or medical condition — within ten days of the decision. ECF No. 16-2 at 9.  Notably, an employee could not receive an

---

[4] Peralta does not challenge the authenticity of the arbitration decision; therefore, for purposes of this motion, the Court will take judicial notice of it.  *See, e.g.*, *Cox v. Perfect Bldg. Maint. Corp., No.* 16-CV-7474, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017) ("[C]ourts have regularly taken judicial notice of arbitration awards . . . in considering a motion to dismiss or to compel arbitration."); *see also Caldarera v. Int'l Longshoremen's Ass'n, Local 1*, 765 F. App'x 483, 485 n.2 (2d Cir. 2019) (finding no error in district court's taking judicial notice of an arbitration award).

Page numbers in citations to record documents other than briefs refer to ECF pagination.

[5] The parties do not dispute that Peralta had access to the process ordered by the arbitrator.  The arbitration decision "created procedures available to all DOE employees seeking an exemption from the vaccine mandate or an accommodation."  *See* Brief for Respondents, *Maniscalco v. Bd. of Educ. of City Sch. Dist. of N.Y.*, No. 160725/2021, 2021 WL 7706594 (N.Y. Sup. Dec. 30, 2021); *see also* Def. Mem. in Supp. of Mot. to Dismiss 18, ECF No. 15 ("[T]the process established by the Impact Arbitration Decision created an opportunity for DOE employees to seek medical and religious exemptions.").

exemption on the basis of a personal, political, or philosophical objection to vaccination.  *Id.* at 11.  An initial determination of eligibility for relief would be made by DOE staff no later than September 23, 2021.  *Id.* at 11-12.  If DOE denied an exemption request, the employee could appeal to an arbitrator, who would issue a final decision by September 25 — either based on the documents in the record or, at his or her discretion, after holding an expedited (virtual) hearing.  *Id.* at 12-13.  These procedures constituted "the exclusive and complete administrative process" for resolving requests for exemptions or accommodations.  *Id.* at 13.

The arbitration decision also set forth options for unvaccinated employees who chose not to request an exemption or accommodation, or whose request was denied.  Those employees would be placed on leave without pay effective September 28, 2021, or upon denial of their appeal (if later).  *Id.* at 15. Employees who became vaccinated while on leave would have the right to return to work as soon as practicable after submitting proof of vaccination to DOE.  *Id.* at 16, 19.  Any employee who intended to remain unvaccinated faced two options: involuntarily separation (with severance), or an extension of unpaid leave (while maintaining health benefits) through September 5, 2022.  *Id.* at 18-19.  In the latter scenario, if the employee had not complied with the vaccination mandate and

returned to work by September 5, she would "be deemed to have voluntarily resigned." *Id.* at 19.  Beginning on December 1, 2021, DOE would seek to terminate unvaccinated employees who had not chosen either separation option.  *Id.*

A few days after the release of the arbitration decision, on September 15, 2021, the Commissioner of Health and Mental Hygiene issued an updated vaccination mandate.  *See* ECF No. 16-1 ("DOE Order" or "vaccination mandate").  That order maintained the requirement for DOE employees to submit proof of vaccination by September 27.  *Id.* at 3.

**B.    Peralta's Challenge to the DOE Vaccination Mandate**

Peralta began teaching in the City schools in September 2018, first as a Dual Language Teacher and then as a Social Emotional Learning Teacher.  Compl. ¶ 13, ECF No. 1. Following the issuance of DOE's vaccination mandate in 2021, Peralta sent "a series of notices" to "defendants and their legal counsel" declaring that the mandate violated her legal rights and that she had the right to refuse vaccination pursuant to the FDCA, 21 U.S.C. § 360bbb-3, which provides for "emergency use authorization" of various therapeutics (including vaccines). *Id.* ¶ 29, 31.  According to Peralta, the defendants "ignored the entire contents of" these missives and "instead issued threats of immediate job loss" if she did not comply with the mandate. *Id.* ¶ 30.  Nevertheless, she declined to be vaccinated by the

September 27 deadline.  *Id.* ¶ 1.[6]  As a result, DOE placed her on leave without pay.  *Id.*

On November 2, DOE sent Peralta an email with information regarding the implications of her continued noncompliance with the vaccination mandate and advising that she would need to submit proof of vaccination in order to return to work.  *Id.* ¶ 9; *id.* at 17 (Ex. A).[7]  The email stated that employees could remain on unpaid leave until September 6, 2022, but any employee who did not return to work by that date "shall be deemed to have resigned."  *Id.* at 17 (Ex. A).[8]  The notice instructed employees wishing to extend their unpaid leave to inform DOE of that choice by November 30, 2021.  *Id.*  Further, the notice warned that if an employee failed to inform DOE of her intention to remain on leave by November 30, the agency would "seek to unilaterally separate [her] from service beginning December 1, 2021."  *Id.*

Peralta filed this action in December of 2021.  *Id.* ¶ 1.  About two months later, on February 11, 2022, Peralta was

---

[6] The DOE vaccination mandate permitted employees to receive any COVID-19 vaccine "approved or authorized for use by the Food and Drug Administration or World Health Organization."  DOE Order 4.

[7] While on leave without pay, Peralta could not work or receive compensation (but kept her medical benefits), use annual leave or sick time, enter her work or school site, or contact students or families.  *Id.*

[8] This deadline is one day later than the September 5, 2022 deadline stated in the arbitration decision.  The pleadings do not reveal the reason for this discrepancy.

terminated for failing to comply with the vaccination mandate. *See* Defs.' Letter dated March 13, 2023, ECF No. 27 at 1; Pl.'s Letter dated February 27, 2023, ECF No. 26 at 2.

## II.  Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[9]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

Moreover, when a plaintiff is proceeding *pro se*, courts "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  But "threadbare recitals of the elements of a cause of action, supported by mere

---

[9] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits citations and internal quotation marks.

conclusory statements, do not suffice," even for a *pro se*
plaintiff. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### III. Discussion

**A. Procedural Due Process Claim**

Peralta claims that DOE's (former) policy of
conditioning employment on vaccination against COVID-19 violated
her Fourteenth Amendment right to procedural due process.
Compl. ¶¶ 44-50.  To state such a claim, a plaintiff must
establish that she (1) possessed a protected property interest
and (2) faced a deprivation of that interest without
constitutionally adequate process. *O'Connor v. Pierson*,
426 F.3d 187, 197 (2d Cir. 2005).  Peralta alleges that she has
"a property interest in her remunerative employment career."
*Id.* ¶ 49.  DOE, she argues, deprived her of due process by
forcing her to "prove that it is safe for her to work without
being vaccinated."  *Id.* ¶ 50.[10]  This claim fails because Peralta
has not adequately alleged the second element — that DOE
deprived her of that interest without due process.

Peralta does not say what process she was due but did
not receive.  Nevertheless, construing the complaint liberally,
the Court views this claim as a challenge to DOE's pre-

_____

[10] DOE appears to be a suable entity because the City of New York and
the Department of Education are separate legal entities.  *See Tanaysha T. v.
City of New York*, 12 N.Y.S.3d 908, 909 (2d Dep't 2015); *Matson v. Bd. of
Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 78 n.8 (2d Cir. 2011).

deprivation process.  As the Second Circuit has explained, "the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond."  *O'Connor*, 426 F.3d at 198.  These steps may be "accomplished through informal procedures; no formal hearing [is] required."  *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991).  The Supreme Court has also recognized that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 n.12 (1985).

Moreover, it is well established that grievance procedures provided through a collective bargaining agreement — procedures like those afforded Peralta — can satisfy due process.  In *Narumanchi*, *supra*, the university notified the plaintiff professor that it intended to suspend him; referenced his collective-bargaining right to contest such a suspension within five days; and offered a single hearing on the grievance at issue.  *See* 850 F.2d at 71-72.  The Second Circuit held these procedures adequate: it "should hardly be surprising," the court wrote, "that the limited procedural rights guaranteed under the circumstances of this case are satisfied by the pre-deprivation notice and hearing rights provided in the grievance procedures under the [Collective Bargaining] Agreement."  *Id.* at 72.  Indeed, the precise procedures available to Peralta have been

deemed adequate process.  *See Broecker v. N.Y.C. Dep't of Ed.*,
573 F. Supp. 3d 878, 887-88 (E.D.N.Y. 2021).

Peralta does not allege that she lacked adequate
notice of the mandate or of the process for seeking relief from
it.  On the contrary, her allegation that she sent "a series of
notices" to the defendants and their lawyers suggests that she
did have advance knowledge of the mandate and the (potential)
consequences of her refusal.  Compl. ¶ 29; *see, e.g.*, *Dagvadorj
v. Badger*, No. 07-5128-CV, 2009 WL 2171314, at *1 (2d Cir. July
21, 2009) (email notice was adequate to inform plaintiff "that
he violated the conditions of his F-1 visa" and of the process
"to be heard"); *cf. In re Great Atl. & Pac. Tea Co., Inc.*,
604 B.R. 650, 657 (Bankr. S.D.N.Y. 2019) (several courts have
held "e-mail service . . . enough for due process purposes as
reasonably calculated to apprise the party receiving notice of
the pendency of a matter") (collecting cases).

Peralta also acknowledges that she received an email
on November 2, 2021 explaining that she was on leave without pay
"due to [her] vaccination status" and describing the
consequences of continued noncompliance with the mandate.
Compl. ¶ 31; *see id.* at 17 (attaching the email as Exhibit A).
That email specifically advised her that if she did not notify
DOE by November 30 of her intent to extend her unpaid leave or
return to work, DOE would "seek to unilaterally separate [her]

10

from service beginning December 1, 2021." *Id.* at 17 (Ex. A).
This is sufficient.

Nor does Peralta allege that she pursued an exemption
from the vaccination mandate through available channels.
Pursuant to the arbitration decision, she could have sought an
exemption or accommodation for one of the enumerated bases for
relief, which would have entitled her to an initial
determination by DOE employees and the opportunity to appeal a
denial to an arbitrator.  *See supra* Section I.A.  Multiple
district courts in this Circuit have held that the same or
similar procedures afforded constitutionally adequate process.
*See, e.g.*, *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436
(S.D.N.Y. 2022) (similar procedures for N.Y.P.D. vaccine
mandate); *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 130
(E.D.N.Y. 2021) (similar procedures for Fire Department
mandate); *Broecker*, 573 F. Supp. 3d at 888 (DOE procedures).
Without availing herself of that pre-deprivation opportunity,
Peralta cannot claim that she was denied due process.  *E.g.*,
*Garland*, 574 F. Supp. 3d at 130 (E.D.N.Y. 2021) (rejecting due
process claim where the plaintiffs — employees of the New York
City Fire Department — failed to submit timely accommodation
requests from the City's vaccination mandate).

Further, Peralta had the option to pursue a *post*-
deprivation remedy in New York state court pursuant to Article

11

78 of the New York Civil Practice Law.  The Second Circuit has "held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (collecting cases).  On that basis, federal courts in New York have cited the availability of an Article 78 proceeding as a factor for denying a procedural due process claim against New York City's vaccination mandate.  *E.g.*,*Capul v. City of New York*, No. 19-CV-4313, 2020 WL 2748274, at *9 (S.D.N.Y. May 27, 2020), *aff'd*, 832 F. App'x 766 (2d Cir. 2021); *Garland*, 574 F. Supp. 3d at 131.

## B. Substantive Due Process Claim

Peralta also alleges a violation of the "right to refuse unwanted and medically unnecessary medical care."  Compl. ¶¶ 40-41.  That right does not appear in the Constitution.  The Supreme Court recently reiterated that it "has long been reluctant to recognize" such unenumerated rights.  *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2247 (2022).  For an unwritten right to fall within the ambit of the Fourteenth Amendment, the right must be "deeply rooted in our history and tradition" and "essential to our Nation's scheme of ordered liberty."  *Id.* at 2246.

The choice to refuse a newly developed vaccine provokes strong reactions on both sides, but it does not meet

this standard.  The Second Circuit and the Supreme Court "have
consistently recognized that the Constitution embodies no
fundamental right that in and of itself would render vaccine
requirements imposed in the public interest, in the face of a
public health emergency, unconstitutional."  *We The Patriots
USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), *cert. denied
sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022).[11]
Accordingly, Peralta's substantive due process claim fails.

**C. Supremacy Clause**

Finally, Peralta argues that DOE's vaccination policy
violates the Constitution's Supremacy Clause — or, framed
differently, that DOE's vaccination mandate conflicts with the
FDCA, which should thus preempt the mandate.  *See* Compl. ¶¶ 52-
67.  "[T]he Supremacy Clause is not the source of any federal
rights . . . and certainly does not create a cause of action."
*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25
(2015).  Peralta, however, attempts to bring a Supremacy Clause-
based claim under 42 U.S.C. § 1983.  Compl. ¶¶ 66-67.  The
Second Circuit has explained that "[a] violation of the

---

[11] The Second Circuit has explicitly rejected the argument that the
Supreme Court had "implicitly overruled" *Jacobson v. Massachusetts*, 197 U.S.
11 (1905), which recognized that a vaccination mandate was a valid exercise
of state power, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63
(2020).  *Cf. Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir.
2021) (explaining, post-*Roman Catholic Diocese*, that a substantive due
process right "depends on the existence of a fundamental right ingrained in
the American legal tradition.  Yet *Jacobson*, which sustained a criminal
conviction for refusing to be vaccinated, shows that plaintiffs lack such a
right.").

Supremacy Clause is distinct from," and does not in itself "give rise to, a violation of federal rights actionable" under Section 1983. *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 321 (2d Cir. 2005). Indeed, Section 1983 offers a remedy "only [for] violations of *rights*, not *laws*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). For a Section 1983 action to lie, then, the federal statute at issue — here, the FDCA — must create a federal right. *Wachovia*, 414 F.3d at 321-22. This is so because Section 1983 "merely provides a mechanism for enforcing individual rights secured elsewhere" in federal law; Section 1983 "by itself does not protect anyone against anything." *Gonzaga*, 536 U.S. at 285.

Peralta points to the emergency use authorization provision of the FDCA (21 U.S.C. § 360bbb-3) as the source of her federal right. Compl. ¶ 61.[12] She argues that Section 360bbb-3(e)(1)(A)(ii) requires that individuals be given the "option to refuse" a product authorized on an emergency basis under that section. *Id.* ¶ 62. The Supreme Court has explained that determining whether a statute confers a right for purposes of a Section 1983 action "is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute confers rights

---

[12] As Peralta notes, the FDA's authority to approve emergency use authorizations for COVID-19 vaccines derived from Section 360bbb-3. *See* Compl. ¶ 23.

14

on a particular class of persons." *Gonzaga*, 536 U.S. at 285.
The key question is whether "Congress intended to confer
individual rights upon a class of beneficiaries," and the answer
must be rooted in the text and structure of the statute. *Id.* at
286-87. Ultimately, "anything short of an unambiguously
conferred right" will not support a cause of action under
Section 1983. *Id.* at 283.

Section 360bbb-3 does not provide an individual right.
The Second Circuit has held that no private right of action
exists to enforce the FDCA, citing the fact that the statute
explicitly restricts enforcement to suits by the United States.
*See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir.
1997) (citing 21 U.S.C. § 337(a)). Peralta has failed to
identify any right conferred by Section 360bbb-3 that she can
vindicate in a Section 1983 cause of action. This claim thus
fails as well.

## IV. Conclusion

Peralta faced a difficult choice between receiving a
vaccine that she did not want and suffering adverse employment
consequences for refusing. Nevertheless, she has not stated a
claim that the defendants violated her rights. The motion to
dismiss, therefore, is granted.

Peralta's claims are dismissed with prejudice because,
for the reasons set forth herein, an amended complaint could not

cure the substantive deficiencies of these claims. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (courts may deny leave to amend based on the "futility of amendment"); *Wallace v. Conroy*, 945 F. Supp. 628, 639 (S.D.N.Y. 1996) (dismissing with prejudice where it was "apparent that any amendment would be futile") (collecting cases). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    September 22, 2023
          Brooklyn, New York